IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

**Plaintiff,**

**v.**

OSCAR FIGUEROA-QUIÑONES,

**Defendant.**

Criminal No. 14-146 (FAB)

MEMORANDUM AND ORDER

BESOSA, District Judge.

Before the Court is defendant Oscar Figueroa-Quinones' motion to dismiss for improper destruction of evidence (Docket No. 46), joined by defendants Mayco Aponte-Rodriguez and Axel Figueroa-Nieves (Docket Nos. 48 & 50). For the reasons discussed below, the Court **DENIES** the motion to dismiss.

I. **Background**

An indictment charges all three defendants with possession with the intent to distribute controlled substances — one hundred or more marijuana plants — in violation of 21 U.S.C. § 841(a)(1)(B) ("Count One"); and possession of firearms — an AK-47 rifle and a Glock pistol — in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) ("Count Two"). (Docket No. 11.) Defendants were arraigned on February 27, 2014 before Magistrate Judge Silvia Carreño-Coll, who ordered an on-site inspection of the seized evidence to be performed within seven days. (Docket No. 15.) On March 4, 2014, the Court ordered the government to

permit defense counsel to view the marijuana plants no later than March 6, 2014. (Docket No. 13.)

Defense attorneys were granted access to the U.S. Customs and Border Protection Agency("CBP")'s storage facility in La Puntilla, in San Juan, Puerto Rico on March 6, 2014 to view the evidence. (See Docket No. 21 at p. 1.) The next day, however, defendants filed a motion alleging a "discovery violation" due to the fact that the marijuana plants had been chopped into pieces and placed into ten storage bags. Id. Because the attorneys were not permitted to open the bags, photograph the material, or personally inspect the drugs, defense counsel requested court intervention. Upon reviewing CBP's policies *in camera*, the Court determined that the government's denial of defendants' request to sample the evidence was not a discovery violation. (Docket No. 37.) It assured the defendants of the government's discovery obligations to provide all documentation regarding the seized marijuana, and explained that if the government were to fall short on those obligations, defendants could file a motion to dismiss based on improper destruction of evidence. Id. at p. 2. On April 23, 2014, defendants filed such a motion, now pending before the Court. (Docket No. 46.)

## II.  Motion to Dismiss Due to Destruction of Evidence

### A.   Standard

Defendants claim that the government destroyed evidence when agents chopped up the marijuana plants before the March 6th

viewing.  (Docket No. 46 at p. 1.)  Alleging that "this purposeful
action deprived [defendants] of their right to access and evaluate
potentially exculpatory evidence," defendants seek to dismiss the
indictment pursuant to the Due Process Clause of the Fifth
Amendment to the United States Constitution.  Id.  The government
responds that agents followed normal CBP practices in seizing and
storing the marijuana plants, and that the evidence "ha[s] not been
altered or tampered [with] in any manner."  (Docket No. 62 at
p. 5.)  Deeming defendants' motion "frivolous" and nothing more
than a "thinly veiled attempt to resurrect [their] failed claim of
[a] discovery violation," the government both maintains that it did
not destroy evidence and claims that defendants fail to prove that
destruction occurred as a result of bad faith.  Id. at p. 2.

        "It is axiomatic that [Brady v. Maryland, 373 U.S. 83
(1963)] and its progeny established that a defendant has a due
process right to request and receive evidence that the government
possesses which is material to his guilt or punishment."  United
States v. Femia, 9 F.3d 990, 993 (1st Cir. 1993).  "[T]he Supreme
Court has developed a framework to analyze 'what might loosely be
called the area of constitutionally guaranteed access to evidence'"
to be used when a defendant accuses the prosecution of destroying
evidence.  Id. (quoting California v. Trombetta, 467 U.S. 479, 485
(1984) and Arizona v. Youngblood, 488 U.S. 51, 55 (1988)).  In
order to establish a due process violation pursuant to that
framework, a defendant must show: (1) either that the evidence had

an exculpatory value that was apparent prior to its destruction *or* that the government acted in bad faith destroying potentially useful evidence; *and* (2) that the evidence was irreplaceable. Olszewski III v. Spencer, 466 F.3d 47, 55-58 (1st Cir. 2006); Illinois v. Fisher, 540 U.S. 544 (2004) (per curiam); Youngblood, 488 U.S. at 56-58 (1988); Trombetta, 467 U.S. at 488-89.

**B.   Analysis**

Defendants fail to meet their burden of establishing destruction of evidence. As a threshold matter, the Court finds no basis for holding that "destruction" occurred in this case. The government represents to the Court that since the marijuana plants were seized according to the normal CBP practices, they "have not been altered or tampered [with] in any manner." (Docket No. 62 at p. 3.) In order to store the marijuana plants, CBP or DEA agents chopped the plants into pieces and placed them into ten large, transparent plastic bags. (Docket No. 46 at p. 2.) Defendants allege that "not only is there no photographic evidence of each of the plants or their roots, but the photographs are also incapable of showing the number of plants with any accuracy." (Docket No. 46 at p. 7.) The government's submission at Docket No. 42, however, represents that controlled substances laboratory reports, color photographs of the marijuana plants, and the seized marijuana have been designated as evidence. (Docket No. 42 at pp. 1-2.) The Court cannot conclude that the plants being in chopped form necessarily means that their roots were "destroyed" without being

photographed to preserve an accurate count of the plants.  See, e.g., United States v. Montgomery, 676 F. Supp. 2d 1218, 1245 (D. Kan. 2009) (deeming "obvious" the fact that the number of plants and their root formations would be critical to the case); United States v. Belden, 957 F.2d 671, 673–74 (9th Cir. 1992) (not finding bad faith even though law enforcement officials failed to preserve the root systems of the marijuana plants because officers conducted counts twice).

Further, defendants offer no support for the first prong of the destruction of evidence standard.  They do not explain what exculpatory value the physical plants could have offered, leaving the Court to surmise that the argument pertains only to Count One's "100 plants" calculation.  In cases involving the destruction of marijuana plants, however, courts generally have found that the plants "constitute only potentially useful evidence as opposed to evidence with apparent exculpatory value, and that defendants must therefore show bad faith to establish a due process violation." Montgomery, 676 F. Supp. 2d at 1242 (compiling cases).  Given the "potential usefulness" of the evidence, defendants must thus demonstrate that law enforcement agents acted in bad faith when they chopped up the marijuana plants.

Nothing suggests that the agents who seized and stored the marijuana plants acted in bad faith by chopping up the marijuana plants before defendants' viewing on March 6, 2014.  "The presence or absence of bad faith . . . necessarily turn[s] on the

[agent]'s knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." Youngblood, 488 U.S. at 57 n.*. Defendants have not offered a bad faith reason for the chopping in this case; they merely recite procedural history and claim that "notwithstanding two Court orders granting the defense's request to access live marijuana plants, the government destroyed them."[1] (Docket No. 67 at p. 2.)   The government, on the other hand, defends the evidence's seizure and storage as complying with CBP "routine, rules, and procedures."   (Docket No. 62 at p. 5.) Consistent with the government's theory is the fact that agents represented to defense counsel at the viewing that they had chopped the plants in order to place the evidence into storage, and that was "the way they always do it."   (Docket No. 21 at pp. 1-2.)

        Courts "have previously held that destruction of evidence in accordance with an established procedure precludes a finding of bad faith absent other compelling evidence." United States v. Deaner, 1 F.3d 192, 200 (3d Cir. 1993) (citing cases).   The Customs

---

[1] Viewing the record as a whole, the Court declines to follow defendants down that rabbit hole to conclude that the government violated court orders by chopping up the plants.   The minute entry for the arraignment proceedings reveals that the government was to make arrangements for an on-site inspection of evidence, (Docket No. 17), and in response to defendants' motion requesting a viewing of the plants "while they are still alive," (Docket No. 13), the Court ordered the government only to "insure that the defense may view the marijuana plants no later than March 6, 2014." (Docket No. 14.)   At the viewing, CBP agents then communicated that they had chopped the plants into bags for storage purposes, in compliance with regular protocol.   (Docket No. 21 at pp. 1-2.) Because none of the court orders made reference to the plants' live status, the Court stops short of attributing bad faith to the government.

Directive submitted *ex-parte* for *in camera* review provides that bulk marijuana in excess of ten kilograms will be photographed and sampled for DEA laboratory analysis.  (Docket No. 33-2 at pp. 34-36.)  The Directive does not appear to contain a provision, however, as to the form in which marijuana plants are to be "stored," or within what time frame chopping — if even permitted — may take place for storage purposes after seizure.[2]  (See Docket No. 33-2 at pp. 5-6, 34-37.)  Nevertheless, though an agency's failure to comply with standard procedures "could provide some evidence of bad faith, [courts] have not held that an improper procedure in and of itself implies bad faith."  Deaner, 1 F.3d at 200.  The Court thus gleans no support for finding bad faith, especially when the government has indicated that photographs, the seized marijuana, and laboratory tests are available and have been designated as evidence.

---

[2] The Directive, however, does provide that "the evidence remaining after sampling will be stored in a secure location pending receipt of DEA laboratory analysis." (Docket No. 33-2 at p. 36.)  Upon completion of the laboratory analysis and return of the bulk marijuana to district director, "the bulk marijuana evidence will be destroyed, subsequent to the effective date of the authorization, by burning in a suitable incinerator" and in accordance with certain additional procedures. Id. at pp. 35-36.  One such procedure directs the special agent in charge to "immediately notify the appropriate U.S. Attorney, or the responsible state/local prosecutor that the amount of seized drugs exceeding the threshold amount and its packaging will be destroyed **after 60 days** from the date notice is provided of the seizure, unless Customs is requested in writing by the authority receiving the notice not to destroy the excess contraband drug." Id. at p. 48 (emphasis added).

Furthermore, defendants do not satisfy the second prong of the destruction standard because they do not explain how the intact marijuana plants are "irreplaceable." As discussed above, the government claims to have color photographs of the marijuana plants, the seized marijuana, and lab results of the controlled substances. Simply stated, the marijuana was not destroyed.

## III. Conclusion

The Court is not convinced that agents' chopping seized marijuana plants constitutes destruction. Because defendants have failed (1) to establish that the government acted in bad faith by chopping the marijuana plants, and (2) to demonstrate that the marijuana plants are irreplaceable, the Court **DENIES** defendants' motion to dismiss, (Docket No. 46).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, May 22, 2014.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE